[L. A. No. 3306. In Bank.—October 5, 1914.]

## ADELAIDE L. HUMBLE, Respondent, v. FREDERICK L. GAY, Appellant.

GIFT INTER VIVOS—HOW ACCOMPLISHED—VERBAL AND WRITTEN TRANS-FERS.—A gift may be made verbally, in which case it is not valid, unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee; or by an instrument in writing, sufficient in form and words used to transfer title, duly executed and delivered by the donor to the donee, with a purpose of transferring title and constituting means whereby the person to whom the gift is made may obtain actual possession thereof, in which case delivery of the property is not a necessary prerequisite to the validity of the gift.

ID.—REJECTION OF OFFER TO GIVE COLLECTION OF RUGS—SUBSEQUENT REFERENCE TO MATTER IN LETTER—WHETHER AMOUNTS TO GIFT.—Where a man at the time of proposing marriage offers the woman a collection of Indian rugs, and she does not accept either the proposal or the rugs, but subsequently he states in a love letter to her that the rugs are at her disposal, a gift is not thereby established and she cannot recover the rugs in replevin a long time after his death.

ID.—ASSERTION OF GIFT AFTER DEATH OF DONOR—SUFFICIENCY OF EVIDENCE.—When the claim of a gift is not asserted until after the death of the alleged donor, it should be sustained by clear

and satisfactory evidence of every element which is requisite to constitute a gift. Gifts first asserted after the death of the alleged donor are always regarded with suspicion by the courts.

APPEAL from a judgment of the Superior Court of Los Angeles County. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, and Allen W. Ashburn, Jr., for Appellant.

E. R. Young, and C. R. Phelps, for Respondent.

· THE COURT.—This cause was transferred to the district court of appeal for the second district. The justices of that court being unable to agree upon a judgment, the cause was duly transferred to this court for decision. The following opinion, prepared by Hon. Victor E. Shaw of that court and concurred in by Mr. Justice James, is adopted as the opinion and judgment of this court:

"Action in claim and delivery to obtain possession of 119 Indian blankets and rugs held by defendant as executor of the estate of Frank P. Sauerwein, deceased, which blankets and rugs plaintiff claims were the subject of a gift *inter vivos* made to her by Sauerwein.

"Judgment went for plaintiff, from which defendant appeals upon a bill of exceptions.

"The only evidence touching the question in issue was that given by plaintiff from which it appears that plaintiff, whose home was at Decatur, Illinois, came to California in 1909, where, in February, 1910, she met Sauerwein, who at the time was the owner of the blankets and rugs in question, having them stored at the house of Mrs. Gay. During plaintiff's stay in California, which ended in April, 1910, she and Sauerwein saw much of each other. The acquaintance on his part developed to the extent that he sought an engagement of marriage with her, at which time, while discussing the rugs and a picture of his house at Taos, he said to her: 'They are yours; you may have those. I will give those to you.' 'The day,' says plaintiff, 'that he said that I might have the rugs was the same day that he proposed to me. I did not accept him then or afterwards. I did not accept the rugs and I did not accept his offer of marriage. We were never really engaged.' . . . 'There was something probably as bind-

ing as that, or more binding; we were very close to each other.' On her way home, and while at the Grand Canyon, plaintiff wrote Sauerwein, who was in Los Angeles, in which letter she referred to the beauty of the rugs which she had seen at the Hopi House and expressed a desire to see his collection of rugs. In response to this letter, Sauerwein, on April 9, 1910, wrote her as follows:

" 'My dear Girl:

" 'Although I failed to find your letter, as I hoped, at the Art School, it came later to the house, where I found it on returning from my second daily visit at the doctor's office. It was a good letter; you believed that you wrote it under two different moods, because it was written at different times, but it really was much the same in spirit throughout; possibly there *was* some slight expression born of the night, the absence of the sun's light, but it was *you* from first to last. You said much in a few brief pages. Especially welcome was the spirit in your words "When I see you we will talk about it in detail." No matter what "it" might be we were to talk about (it was the G. Canon) the way you wrote the sentence appealed to me. I have wished much for you; awakening with a gray dawn this morning, the desire was almost oppressive.

" 'So, Miss Humble, you liked the old rugs at the Hopi House, and really have a desire to see *my* collection. I think you are very lacking in both enthusiasm and appreciation. Now why did you not say something to the effect that you had not before understood my liberality and princely generosity when I told you that *you might have them;*—merely because I made no blatant boast, you did not give my collection a second thought. *O you!!* Well, you perverse person, I still have what I assure you is a very rare accumulation of Indian textiles, and—now mark my prodigal—what? selfishness—they *are* (I make a low salaam) at your disposal. There!

" 'I am very glad you liked Mr. Brant. You say that he is a very fine nature. I must not write more now, for a Mr. Maxwell is about due here to look at my work. Not to buy. He is the one writing the art papers for Chicago magazines. The day is gray and chill; yesterday was like it. I wish you had taken me to the desert. . . .

                         " ' (signed) Francis.' "

"The remainder of the letter refers to medical treatment being administered to him and negotiations for the sale of pictures. In reply to this letter plaintiff testified that she wrote Sauerwein saying, 'Mr. Sauerwein, I will accept the rugs, meaning I will surprise you by saying I will take the rugs, because he had offered them to me before and I wrote, sort of feeling he would be surprised about it; that I would now take the rugs since he had offered them to me before.'

"Plaintiff's contention that Sauerwein gave her the rugs, in the absence of any delivery thereof, is based upon the paragraph of this letter commencing with the sentence: 'So, Miss Humble, you liked the old rugs at the Hopi House, and really have a desire to see my collection.' While other letters passed between Sauerwein and plaintiff, no further reference by either of them appears to have been made to the rugs, or the alleged gift thereof. On April 19th Sauerwein left California for Stamford, Connecticut, where he died June 14, 1910. After the death of Sauerwein, plaintiff, in August, 1910, received a copy of his will and on two occasions saw defendant in Chicago, where she talked to him about Sauerwein's estate, he telling her that Sauerwein had left everything to her. She did not tell defendant that Sauerwein had in his lifetime given her the rugs, though she told him that he had offered her everything he had. Plaintiff knew the rugs were packed and left by Sauerwein at Mrs. Gay's, and although she returned to California in March, 1912, and called at Mrs. Gay's, she made no claim to the rugs, nor referred to the fact that Sauerwein had given them to her; nor did she, until some two years after the death of Sauerwein and immediately before instituting this suit, disclose to any one connected with Sauerwein's estate the fact that she claimed the rugs as a gift.

"Section 1146 of the Civil Code, defines a gift as 'a transfer of personal property, made voluntarily, and without consideration.' It may be made verbally, in which case it 'is not valid, unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee' (sec. 1147); or by an instrument in writing, sufficient in form and words used to transfer title, duly executed and delivered by the donor to the donee, with a purpose of transferring title and constituting means whereby the person to

whom the gift is made may obtain actual possession thereof, in which case delivery of the property is not a necessary prerequisite to the validity of the gift. (*Estate of Hall,* 154 Cal. 531, [98 Pac. 269].)

"Plaintiff relies upon the letter from Sauerwein, dated April 9, 1910, as such duly executed instrument in writing, sufficient in form and substance to transfer the title to the rugs. The claim of gift was not asserted by plaintiff until long after the donor's death. 'When the claim of a gift is not asserted until after the death of the alleged donor, it should be sustained by clear and satisfactory evidence of every element which is requisite to constitute a gift.' (*Denigan* v. *Hibernia etc. Society,* 127 Cal. 137, [59 Pac. 389].) 'Gifts first asserted after the death of the alleged donor are always regarded with suspicion by the courts.' (*Matter of Manhardt,* 17 App. Div. 1, [44 N. Y. Supp. 836]. See, also, *In re O'Connell,* 33 App. Div. 483, [53 N. Y. Supp. 748]; *DePuy* v. *Stevens,* 37 App. Div. 291, [55 N. Y. Supp. 810].) According to plaintiff's testimony the relation of Sauerwein to her was and had been that of a man addressing a woman whom he sought to make his wife. In view of this relation and the fact that he had on a former occasion, coupled with a proposal of marriage, which plaintiff did not accept, offered to give her the rugs and the house at Taos, it is but fair to assume that the statement contained in the letter, 'they are at your disposal,' was likewise intended to be coupled with the condition that plaintiff should agree to marry him. This conclusion is borne out by the fact that in the letter he speaks of the occasion 'when I told you that you might have them,' which refers to the time of his proposal. Hence, if the statement in the letter be deemed sufficient to transfer the title, it was without consideration, but on condition that plaintiff accept his proposal of marriage, which she says she never did. Whether the transaction be deemed a gift or a contract, performance of the condition was a necessary prerequisite to the passing of title.

"Not only are the words used in the letter, 'they are at your disposal,' inapt and inappropriate words of transfer, especially when inserted in a document which did not purport to be a conveyance (*Davis* v. *McGrew,* 82 Cal. 135, [23 Pac. 41]), and therefore insufficient to transfer the rugs to plaintiffs, but, in our opinion, it is manifest that Sauerwein never in-

tended that this love letter should constitute the means whereby plaintiff should obtain from Mrs. Gay possession of the rugs. Says the supreme court, in *Knight* v. *Tripp,* 121 Cal. 674, [54 Pac. 267] : 'There must be both a purpose to give and the execution of this purpose. The purpose must be expressed,—either orally or in writing,—and it must be executed by the actual delivery to the donee of the thing given, or of the means of getting possession and enjoyment thereof. A written instrument may be available for designating the property intended to be given, as well as to show the intention of the donor, but by itself it no more establishes the gift than would the same words orally delivered by the donor . . . It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and complete gift.' (See, also, *Allen-West Comm. Co.* v. *Grumbles,* 129 Fed. 289, [63 C. C. A. 401].) If it was not intended that the letter should divest Sauerwein of all dominion over the rugs and constitute the sole and only evidence of plaintiff's title as a means of enabling her to obtain possession thereof, then clearly some further act on the part of Sauerwein was contemplated as necessary in order for plaintiff to obtain possession thereof, in which case, the letter was merely an expression of intention to make a gift.

"The judgment is reversed."