[Civ. No. 1543.   Third Appellate District.—December 15, 1916.]

EMMA M. BURKETT, Appellant, v. W. M. DOTY, Respondent.

ASSIGNMENT OF NOTES AND MORTGAGE—DELIVERY AFTER DEATH—NATURE OF TRANSACTION—CONVERSION.—An assignment of three promissory notes, and the mortgage given to secure their payment, which recited that the assignment was made in consideration of ten dollars in hand paid and received by the assignor, and which declared that it thereby presently assigned such notes and mortgage to the assignee, constituted a present grant, where delivery of the assignment was immediately made to the assignee, notwithstanding the assignor retained the notes, and the assignment provided that the same was not to be placed of record until after the assignor's death; and where such notes were afterward indorsed and used as collateral for the purpose of obtaining a loan for the assignor, the assignee is entitled to recover damages for their conversion.

32. Cal. App.—22

ID.—DELIVERY OF ASSIGNMENT—SUFFICIENCY OF PROOF.—The delivery of a written assignment of a mortgage is sufficiently established by its production at the trial by the plaintiff, who had previously caused it to be recorded.

ID.—DELIVERY OF GRANT—ABSOLUTE CHARACTER OF.—Under section 1056 of the Civil Code a grant cannot be delivered to the grantee conditionally. Such a delivery is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition on which the delivery was made.

ID.—SALE OF PERSONAL PROPERTY—DELIVERY.—A sale of personal property is good as between the parties whether the possession be delivered or not. Want of delivery renders it only void as to creditors and subsequent purchasers.

ID.—GIFT INTER VIVOS—DELIVERY OF POSSESSION—CONSIDERATION UNNECESSARY.—Where a gift *inter vivos* is perfected by delivery of possession of the thing or delivery of a deed of gift it is complete, although made without any consideration.

ID.—CONSIDERATION OF WRITTEN INSTRUMENT—PAROL PROOF WHEN INADMISSIBLE.—While the recitals of consideration in written instruments are not conclusive as to the amount or character or payment of the consideration, when these latter matters are the subject of litigation, evidence of want of consideration, or of a different consideration, is not admissible for the purpose of varying, contradicting, and defeating covenants by which rights are expressly vested.

APPEAL from a judgment of the Superior Court of Butte County. H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

Devlin & Devlin, and Lon Bond, for Appellant.

Guy R. Kennedy, and W. H. Carlin, for Respondent.

CHIPMAN, P. J.—This is an action to recover damages for the conversion of a promissory note executed September 25, 1911, for $1,395.85 by Harry Harrington to Nellie Mead Doty, the then wife of defendant. This note was the first of a series of three notes executed and delivered by Harrington to Mrs. Doty, each of the same date and for the same amount and secured by mortgage. The conversion is alleged to have occurred April 1, 1912.

Defendant answered, denied that plaintiff was on that day or at any other time the owner or entitled to the possession of

said note or of any moneys due or to become due thereon; alleged that in the month of March, 1912, Nellie Mead Doty was the owner of said note, and by her direction defendant cashed the same at the Sacramento Valley Bank at Biggs, and thereafter in said year and prior to her death, at her request and direction, he applied the proceeds of said note to her use and benefit to the extent of about one thousand dollars; that said Nellie Mead Doty died on the eighteenth day of July, 1912, and thereafter to wit, on April 7, 1913, defendant was duly appointed administrator of her estate; that all the moneys realized from said note and not expended for the benefit of said Nellie during her life were received by defendant as such administrator, and not otherwise, and he has since retained possession thereof; denied that on April 1, 1912, or at any other time, defendant unlawfully, or at all, converted or disposed of said note, and denied that plaintiff ever had any ownership in, or right or title to, said note or to any of the moneys represented thereby.

The cause was tried by the court without a jury and the following findings were made by it: That plaintiff was not, on April 1, 1912, or at any other time, the owner of or entitled to possession of said note, which was on April 1, 1912, of the value, principal and interest, of $1,486.57; that on said day, or at all, defendant did not, nor has he at any time, unlawfully, or at all, converted said note to his own use, or at all, or "done anything in connection therewith except as hereinafter in these findings set forth"; that said note was executed as alleged in the complaint and thereafter, as alleged in the answer and while in the possession of Mrs. Doty, the said note was by her delivered to defendant who thereafter, under her instructions, as alleged in the answer, delivered the same to said bank "and from said bank then and there received the full value . . . and applied and used all thereof to and for the use and benefit of said Nellie Mead Doty, something over one thousand dollars of the same being so applied and used during her lifetime and the remainder after her death in payment of her just debts and liabilities"; that she died July 18, 1912, and defendant was, as alleged in the answer, duly appointed administrator of her estate, and he thereupon took charge of all her estate and has ever since retained such possession; that said note was not paid at its maturity, and since his said appointment "defendant was

called upon by said bank to protect the said indorsement of said promissory note made by said Nellie Mead Doty aforesaid, and accordingly he did protect the same by paying to said Sacramento Valley Bank the full amount of said promissory note, paid as aforesaid by said bank when it cashed the same as hereinbefore specified; and thereupon said bank delivered said promissory note to defendant who has ever since retained and now does retain the same," but at no time has plaintiff ever had any right to or title in said note, or any moneys represented thereby. Judgment was accordingly entered for defendant that plaintiff take nothing by the action. Plaintiff appeals from the judgment on bill of exceptions.

Plaintiff introduced the Harrington notes and mortgage, and also the assignment of the same to plaintiff. The latter reads: "Know all men by these presents: That Nellie Mead Doty, of the City of Biggs, County of Butte, State of California, the party of the first part, for and in consideration of ten ($10.00) Dollars, lawful money of the United States of America, to her paid by Emma M. Burkett (a widow), of the City of Chico, County of Butte, State of California, the party of the second part, the receipt whereof is hereby acknowledged, by these presents assigns to the party of the second part, a certain indenture of mortgage, bearing date the 25th day of September, 1911, made by Harry Harrington, of the County of Butte, State of California, on the following land and premises: [Description.]

"Together with the three (3) promissory notes therein described, and the money due and to become due thereon, with the interest. . . .

"This assignment of said mortgage is not to be placed as of record during the lifetime of Nellie Mead Doty, the party of the first part."

Duly executed "and recorded at the request of Emma M. Burkett on July 19, 1912, in Book 'B' of assignments of Mortgages, at page 483, records of Butte County."

It was stipulated that on December 30, 1911, Mrs. Doty was the owner of the note and mortgage in question, and that she was the wife on that day of defendant and that she died July 18, 1912; "that the note itself was never delivered to plaintiff but remained in the custody of Nellie Mead Doty until the time it was turned over by her to the defendant

in this action." Defendant testified that the note in question on December 30, 1911, was in a tin box in the vault of said bank to which both he and his wife had access.

He testified: "In February or March of 1912, Mrs. Doty was taken sick and we had to take her to the hospital and she realized we had to have money and she had me go to the bank and make arrangements with Mr. Brough, the cashier of the Sacramento Valley Bank, to get money on the note and use it for her sickness. In accordance with those instructions, I borrowed the money first. I took the note and had her indorse it and put it in the bank. I had to go to the bank and ask for the box and take out the note. At that time the note was not indorsed. I took it to Sacramento where she was sick, and she indorsed it there. I think it was in the Sisters' Hospital at Sacramento. I then returned it to the bank as collateral for the money I borrowed. During her illness I drew against this note and paid her bills. This was done under her instructions."

Over the objection of plaintiff, he testified as to the amount of money used prior to Mrs. Doty's death for her benefit, and also after her death for funeral expenses, doctor's bills, etc., amounting in all to "more than the full amount of the note." Over objection, proof of her death and of the appointment of the administrator was made. On cross-examination, he testified:

"By Mr. Schwab: Q. Mr. Doty, I understood you to say that you took this note from the box in the Sacramento Valley Bank and took it to the Sacramento Hospital at Sacramento and had Mrs. Doty indorse it and brought it back to the bank, is that right? A. That is right.

"Q. And then you, as I understand you to say, that you deposited as collateral, that note and borrowed money on it—that is a fact—did you actually pass title to it, did you negotiate it? A. Did I negotiate it, what do you mean?

"Q. Tell us what you did, I don't quite understand you—you said at one time that you borrowed money on it and then afterward that you got this money and deposited it in the bank there—what did you do, I want to get the facts, that is all. A. I negotiated with the bank that I might borrow money on the note.

"Q. What has become of the note now? A. I have it, I took it up afterward.

"Q. Do you still own it now? A. Yes, sir.

"Q. In other words, at the present time, you have possession of the note and it is a binding obligation as to Harry Harrington, the maker of the note? A. Yes, sir. . . .

"Mr. Schwab: Q. Is it the fact that you claimed the note as administrator of the estate of Nellie Mead Doty, as administrator of that estate? A. I claim it as my own.

"The Court: Q. Did you take it up with your own money? A. Yes, sir, I took it up with my own money.

"Mr. Schwab: Q. You still claim possession of it? A. Yes, sir; certainly.

"Q. And still claim the title to it, and that you own it? A. Yes, sir; certainly.

"Q. And you never did actually pass title to the bank at the time that you got the money there, you simply deposited it as a collateral security; is that the fact? A. I placed it in the bank to draw against it and if he had taken it all up and the note had been paid, I would have had nothing to do with it.

"Q. The understanding was that that was simply a collateral security? A. Necessarily so, we had used all of the note and if Mr. Harrington had gone forward and paid the note there would have been nothing more to do."

Over objection by plaintiff, the witness testified: "A. The last of the series remained there up to the time of my wife's death. The second of the series, she realized that we were going to use a great deal of money, that she had better indorse the other one and use it the same as we did the other one, and I went to the box and took it up the same as I did the other one, took it to the house and she indorsed it. I then took it and put it in my safe and never used it.

"Q. She had indorsed that looking to the time that it might be needed? A. Yes, sir. She died before it was needed. Number 2 of the series remains in my possession and number 3 remained in the box unindorsed. Number 1 had been indorsed and used."

Over plaintiff's objection plaintiff was called as defendant's witness and testified that she did not pay Mrs. Doty anything for the assignment. A motion to strike out the answer was denied and plaintiff excepted.

This is substantially the evidence in the case. There was no evidence of any circumstances attending the assignment,

or of the relation of the parties to each other, or as to the motive of Mrs. Doty in making the assignment. There was no suggestion of fraud, mistake, or undue influence in the execution of the assignment.

Plaintiff's position is that by the assignment the title to the note and mortgage in question passed absolutely to plaintiff, although the note was then in the possession of Mrs. Doty and remained in her possession, and although she afterward indorsed it, and her husband by her direction used it as collateral for a loan for her benefit. It was because of this view of the assignment that plaintiff objected as immaterial, irrelevant, and incompetent, to testimony as to the hypothecation of the note by Mrs. Doty's direction and the uses made of the money borrowed by her husband; also the evidence as to her death and the appointment of the administrator of her estate; also the testimony that the notes were kept in a box to which Mrs. Doty and her husband had access; also the testimony of plaintiff, when called by defendant, that she paid no money consideration for the assignment.

The position of defendant is that "the whole transaction shows conclusively that Mrs. Doty did not intend to deliver or part title with any of the promissory notes"; that "she didn't indorse them, but on the contrary, she kept them in her possession with a view to using them if necessary"; that there is nothing in the transaction "which shows any evidence of a delivery of the property, which, of course, is capable of manual delivery, or of any intent to do so during the life of the donor"; that "the plaintiff testified that no consideration was paid and that unless she can establish the transaction as a gift she will have no standing before this court (Civ. Code, secs. 1146, 1147, 1149; *Hart* v. *Ketchum,* 121 Cal. 426, [53 Pac. 931]"; that "a written gift need not be actually delivered but no gift of personal property, whether written or verbal, is complete and effectual unless the donor intends to divest himself completely of control or dominion over the property given," citing *Estate of Hall,* 154 Cal. 527, 529, [98 Pac. 269]; *Noble* v. *Garden,* 146 Cal. 225, [2 Ann. Cas. 1001, 79 Pac. 883]; *Noble* v. *Learned,* 153 Cal. 245, [94 Pac. 1047]; *Humble* v. *Gay,* 168 Cal. 516, [143 Pac. 778]. Treated as a sale, defendant's position is that "not being accompanied by any immediate or continued change of possession the transaction was void (Civ. Code, sec.

3440), and void not only as to creditors but as to the executrix of the will (*Kelly* v. *Murphy,* 70 Cal. 560, [12 Pac. 467]).''

It seems to us that the decision in this case must turn upon the admissibility of the evidence objected to by plaintiff. If that evidence can be considered, it has a tendency to show that the donor or assignor did not intend to presently pass the title to the property. We cannot attribute to Mrs. Doty a purpose to knowingly violate her transfer of the notes and mortgage to Mrs. Burkett. She must be held to have acted upon the assumption that she had a right to dispose of the note in question, and to convert the proceeds to her own use notwithstanding the assignment to plaintiff. We are brought, therefore, to consider the character and legal effect of the assignment.

The assignment bears date December 30, 1911, was signed and acknowledged of that date and recites: ''Signed, sealed and delivered in the presence of F. F. Carduff.'' ''A grant takes effect, so as to vest the interest intended to be transferred, only upon its delivery by the grantor.'' (Civ. Code, sec. 1054.) ''A grant cannot be delivered to the grantee conditionally. Delivery to him, or to his agent as such, is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition on which the delivery was made.'' (Civ. Code, sec. 1056.) There is a presumption that the instrument was delivered on the day of its date. (Civ. Code, sec. 1055.) Plaintiff had possession of the instrument and produced it at the trial, having previously caused it to be recorded. This sufficiently established delivery, and there was no evidence to the contrary. (*Towne* v. *Towne,* 6 Cal. App. 697, 701, [92 Pac. 1050].) The fact that the grantor did not deliver possession of the property to the grantee was a matter of no importance as affecting the completion or efficiency of the transfer. (*Driscoll* v. *Driscoll,* 143 Cal. 528, [77 Pac. 471]; *Francoeur* v. *Beatty,* 170 Cal. 740, [151 Pac. 123].) The instrument of assignment was not rendered executory because accompanied by no actual delivery to the transferee of the property transferred. ''A sale of personal property is, however, good as between the parties whether the possession be delivered or not. Want of delivery renders it only void as to creditors and subsequent purchasers.'' (*Driscoll* v. *Driscoll,* 143 Cal. 528, [77 Pac.

471].)   No question arises here as to the rights of creditors or subsequent purchasers.

What Mrs. Doty's motive was in inserting in the grant the provision that "this assignment of said mortgage is not to be placed of record during" her life, is not apparent, and can only be conjectured. We have seen that by section 1056 of the Civil Code a grant cannot be delivered to the grantee conditionally. The placing of the instrument of record was not essential to its efficacy. Recordation has no other function than that of notice to the world (Civ. Code, sec. 1213) ; and "an unrecorded instrument is valid as between the parties thereto and those who have notice thereof." (Civ. Code, sec. 1217.)

We must look alone to the terms of the instrument to determine whether it is testamentary in nature and not to be operative as a transfer of the property purported to be conveyed by it, until the death of the maker. As was said in *Tennant* v. *John Tennant Memorial Home,* 167 Cal. 570, 579, [140 Pac. 242, 246] : "This is always essential. If the instrument, according to its proper legal effect under the rules of conveyancing, passes at the time of its execution a present interest or title in the property to a third person, although it may be only an interest in a future estate and may be subject to defeat on the happening or nonoccurrence of a future event, it is a present conveyance and not a will."

That the assignment is absolute in its terms and conveyed a present interest in the notes and mortgage cannot be doubted. We can discover nothing in the provision as to recording which shows, or has a tendency to show, an intention of the grantor to reserve to herself the title to the property, or to postpone its enjoyment by the grantee until after the death of the grantor. Nor do we think the clause in question gives any indication that the grantor did not intend to divest herself completely of control or dominion over the property, which is the test given in the cases cited by respondent, such as *Estate of Hall,* 154 Cal. 529, [98 Pac. 269], and others. We cannot see that the provision amounted to anything more than a request that the assignment be not recorded until after the assignor's death. But it was held in *Dimmick* v. *Dimmick,* 95 Cal. 323, 328, [30 Pac. 547], that the fact that the grantor requested the grantee to refrain from recording the instrument until after his death was entirely immaterial.

If, as we hold, the clause in question had no operative effect upon the instrument as a present grant of the property, it was not competent to prove by parol any facts "tending to establish an agreement contrary to the plain import of the written assignment, which on its face is absolute." (*Albert* v. *Albert*, 12 Cal. App. 268, 271, [107 Pac. 156]. See *Mowry* v. *Heney*, 86 Cal. 471, 476, [25 Pac. 17].)

Proof that no consideration was paid for the assignment doubtless was admitted to show that the transaction was a gift, but even so, the rule of construction would be the same as in case of a grant—i. e., the language of the instrument must control. As was said in the Driscoll case: "Where a gift *inter vivos* is perfected by delivery of possession of the thing or delivery of a deed of gift it is complete, although made without any consideration."

The assignment stated that it was made in consideration of ten dollars in hand paid to and received by the assignor. The rule is thus stated in *Arnold* v. *Arnold*, 137 Cal. 291, 296, [70 Pac. 23, 24]: "As to the subject of consideration, the law is, that while the recitals of consideration in written instruments are not conclusive as to the amount or character or payment of the consideration, when these latter matters are the subject of litigation, evidence of want of consideration, or of a different consideration, is not admissible for the purpose of varying, contradicting and defeating covenants by which rights are expressly vested." *Hendrick* v. *Crowley*, 31 Cal. 472, *Feeney* v. *Howard*, 79 Cal. 525, 530, [12 Am. St. Rep. 162, 4 L. R. A. 826, 21 Pac. 984], and many other cases are cited to like effect.

The evidence showed a conversion by defendant. (38 Cyc. pp. 2005, 2009; *Dodge* v. *Meyer*, 61 Cal. 405; *Wood* v. *McDonald*, 66 Cal. 546, [6 Pac. 452].) Defendant cannot escape liability on the ground that he was acting as the agent of Mrs. Doty. (28 Am. & Eng. Ency. of Law, p. 688; 38 Cyc. p. 2056 (d); *Swim* v. *Wilson*, 90 Cal. 126, [25 Am. St. Rep. 110, 13 L. R. A. 605, 27 Pac. 33].)

The judgment is reversed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 12, 1917.