[Civ. No. 6296. Third Appellate District.—November 6, 1940.]

J. F. MOREHEAD, as Executor, etc., Respondent, v. ELMA TURNER et al., Appellants.

Clarence H. Wilson and Hubert I. Townsend for Appellants.

Grayson Price and Ware & Ware for Respondent.

THOMPSON, J.—The executor of the last will of Missouri E. Clark, deceased, brought suit against the defendants for an accounting of certain stocks, bonds, notes and collaterals belonging to the estate, in the hands of the defendants. The answer alleges that the property in question was given to the defendants by the testatrix in her lifetime. The court determined that no gift of the property or any part thereof was made to the defendants or either of them and rendered judgment against them for delivery of the property, together with the value of such portion thereof as had been disposed of or appropriated to their use. From that judgment this appeal was perfected.

It is contended the amended complaint fails to adequately describe the property in question; that the findings and judgment are not supported by the evidence, and that the judgment is not supported by the findings.

A general and special demurrer to the original complaint was sustained as to the first count of that pleading. An amended complaint, couched in five separate counts, was subsequently filed. The second count charged that certain "sums of money, shares of corporate stock, bonds, certificates of building and loan associations and other securities", the character and amounts of which were unknown to the plaintiff, but known to the defendants, aggregating the value of $5,000, were entrusted by Missouri E. Clark during her lifetime to the defendants "for the purpose of keeping and preserving" said property for her; and that Mrs. Clark died possessed of that property; and upon demand therefor by the executor of her estate the defendants neglected and refused to deliver to him said property or any part thereof. No demurrer to the amended complaint was filed. The defendants answered the amended complaint, denying the material allegations thereof, and affirmatively asserting that the property in question was given by the deceased to the defendants.

Missouri E. Clark was a widow eighty-two years of age, residing in her own home at Chico. She was possessed of both real and personal property. The executor, Mr. J. F. Morehead, is a nephew of the deceased. He was formerly president of the Savings and Commercial Bank of Chico. The defendants are nieces of the deceased. Elsa Boydstun

was a school teacher who resided at Chico. Elma Turner lived at Oroville. Both of the defendants are daughters of a brother of the deceased. There are many other nieces and nephews of the deceased. In October, 1935, Mrs. Clark conveyed her home in Chico by deed to Elsa Boydstun. In the spring of 1935, Mrs. Clark handed to her niece, Elma Turner, a package containing the notes, bonds and collaterals in question. They were placed in a safe deposit box belonging to the custodian. The following spring Mrs. Clark fell and broke her hip, as a result of which she died April 28, 1936. Her nephew, J. E. Morehead, was appointed and qualified as executor of her last will. As such executor, he promptly demanded of the defendants the custody and possession of the personal property entrusted to their care by the deceased, which they refused, claiming that the property, with the exception of one $1,500 note executed by A. H. Sanborn, was given to Elsa Boydstun by the deceased in her lifetime. This suit for an accounting was then commenced.

The court found that Missouri E. Clark entrusted to her niece Elma Turner as her agent, for safe keeping, to be returned to her upon demand, the following property:

Two mortgage gold bonds of the face value of $500 each of the Washington-California Company, due September 1, 1944; two Miller & Lux bonds of the face value of $1,000 each, due in 1935, and 1945, respectively; one Yosemite Lumber Company bond of the value of $500, due January 1, 1940; 250 shares of the capital stock of the Equitable Credit Company of Delaware; 50 shares of the capital stock of Peoples Savings and Commercial Bank of Chico; one promissory note of $1,500 executed by Roy Uhl and secured by Coos Bay Lumber Company stock and one $1,500 note executed by A. H. Sanborn.

The court further found that the two Washington-California Company mortgage gold bonds of $500 each, upon demand, were duly surrendered to the executor; that the Uhl note of $1,500 matured and was surrendered to the deceased in her lifetime; that the Yosemite Lumber Company bond of $500 was sold by Elma Turner for $622.43 which sum was paid to and appropriated by Elsa Boydstun; that the $1,500 Sanborn note was endorsed by the decedent in her lifetime to Elma Turner, as her agent, for the sole purpose of collection; that all of the property, except the two Washington-Califor-

nia Company bonds and the Uhl note, were wrongfully retained and appropriated by the defendants.

The court specifically found that none of the property in question was given by Mrs. Clark to the defendants, or either of them, and upon the contrary that they had wrongfully retained and appropriated all of said property to their use; that they had received from the Yosemite Lumber Company bond, at the time of its redemption, the sum of $622.43 and from the two Miller & Lux bonds the further sum of $2,000, the reasonable value thereof, which sums they failed and refused to account for, and that they now retain and refuse to deliver to the executor the remaining property belonging to the estate, consisting of the Sanborn note, the Coos Bay Lumber Company stock, 250 shares of the stock of Equitable Credit Company of Delaware and 50 shares of the stock of Peoples Savings and Commercial Bank of Chico. Judgment was thereupon rendered against the defendants for damages in the sum of $2,622.43, and for immediate return and delivery to the executor of the said property in their possession. From that judgment this appeal was perfected.

The defendants waived their objection to a more specific description of the property which was involved in the accounting by their failure to demur to the amended complaint. A general and special demurrer to the original complaint was sustained as to the first count. An amended complaint couched in five separate counts was filed. No demurrer to the amended complaint was presented. It has been definitely held an amended complaint supersedes the original complaint and that it furnishes the sole basis of the cause of action. If the defendants seek to avail themselves of a defective description of property involved in a suit for an accounting or of an alleged uncertainty or ambiguity in the complaint it is necessary for them to renew their demurrer to the amended pleading or the defects will be waived. (*Morris* v. *Hartley,* 26 Cal. App. 61, 69 [146 Pac. 73] ; *Marsh* v. *Lapp,* 180 Cal. 231 [180 Pac. 533] ; 21 Cal. Jur. 275, sec. 192.)

Moreover, in a suit for accounting for personal property brought by the executor of an estate against defendants who have possession of the property, when it appears from the complaint that the defendants have knowledge of facts or of the description of the property involved, and the plaintiff

lacks the means of securing a more particular description, a demurrer for such uncertainty does not lie. (*Schaake* v. *Eagle Automatic Can Co.*, 135 Cal. 472 [63 Pac. 1025, 67 Pac. 759].) ■ In a suit for accounting the pleader is not required to state specifically facts peculiarly within the knowledge of the opposite party. (*Brea* v. *McGlashan,* 3 Cal. App. (2d) 454, 459 [39 Pac. (2d) 877].)

■ The judgment is adequately supported by the evidence. The evidence does not show that Mrs. Clark made a gift of the property to Elsa Boydstun in 1934. All that she testified to was that her aunt said to her "I want you to have my securities." She did not then use language indicating a present conveyance of title. She did not hand her the documents. She did not even show her the package containing the instruments. She did not tell Miss Boydstun what "securities" she wished her to have. They were then kept by Mrs. Clark in a tin box in her own possession. There was no acceptance of the purported gift. Miss Boydstun thanked her and replied "I could not take them." She added that she did not have a deposit box in which to keep them. Certainly that transaction fails to show a consummated gift of unidentified securities.

There is ample evidence to support the court's findings that the instruments were not given by Mrs. Clark to Elma Turner for her sister, Elsa Boydstun. Elma Turner testified that in the spring of 1935 her aunt handed her the package of documents and "told me to take them and keep them for Elsa, and I asked her when she wanted me to give them to her, and she said, 'now' ". Upon being asked when she actually handed them to her sister, Elma said "when she (Elsa Boydstun) came over after her aunt's death". The very statement of the aunt regarding her intention is conflicting. First Elma said her aunt told her she wanted her to *"keep them* for Elsa". Upon being asked when she wanted her to give them to Elsa she replied, "now". Yet the documents were not given to Elsa Boydstun until after the death of Mrs. Clark. It was the sole province of the trial judge to determine the credibility of the witnesses. He found that the instruments were handed to Elma Turner to hold as the agent of Mrs. Clark. The evidence shows that the two Miller & Lux bonds of $1,000 each were not included in the package handed by Mrs. Clark to Elma Turner in April or May, 1935,

It appears those bonds had been lost and that the company issued new certificates to Mrs. Clark in the summer of 1935. Mrs. Clark gave a bond to secure her good faith in claiming that the bonds had been lost. Mrs. Clark paid the premium on that surety bond. Interest on those bonds was subsequently paid by the company to Mrs. Clark. She received the entire income from those bonds to the time of her death in April, 1936.

The evidence further shows that in November, 1935, the Yosemite Lumber Company wrote Mrs. Clark, telling her that their bonds held by her would be redeemed and paid January 1, 1936. Her nephew, Mr. Morehead, called upon his aunt in that regard. She instructed him to collect the money due on those bonds. When he told her, "I will have to have the bonds" to collect the money due, she replied, "You will have to call up Elma and get them, *because she is taking care of it for me.*" Morehead testified that he called Elma and told her what their aunt had said regarding the bond; that she then made no claim that the bond belonged to her sister, and that she never made any such claim prior to the death of Mrs. Clark. But Elma did not send him the bond. On the contrary, she delivered it to a bank for collection, and paid the money received therefrom to her sister on August 11, 1936, after the death of their aunt. Elma received the sum of $622.43 on that transaction.

The subsequent conduct of Mrs. Clark with respect to the Sanborn and Uhl notes of $1,500 each is in conflict with the defendants' contention that the entire package of instruments, including those two notes, was handed to Elma Turner in the spring of 1935, to be immediately transferred as a gift to Elsa Boydstun. It is conceded the package did contain those two notes. But the following transaction indicates that Mrs. Clark did not intend to give those notes to the defendants or either of them. In fact, the answer which was filed in this case alleges that the Sanborn note was assigned to Elma Turner to collect for Mrs. Clark and that "the proceeds were to be paid to Henry Boydstun and Henry Hansen", two other nephews of the deceased. In the fall of 1935, the Uhl note matured and it was paid to Mr. Morehead at the request of Mrs. Clark, and accounted for by him in the estate. The note was procured from Elma and surrendered. The proceeds therefrom were retained by Mr. Morehead at the re-

quest of Mrs. Clark, and subsequently accounted for in the estate proceedings. Roy Uhl testified that he went with Mr. Morehead to see Mrs. Clark about paying the note; that she then said to Mr. Morehead: "Frank, I want you to go and get my stuff from her (Elma Turner) . . . I am afraid she might be planning to do something" with it. When the Uhl note was paid, Mrs. Clark said to her nephew, Mr. Morehead, "Now, Frank, I want you to take care of this (money) for me".

The allegations of the answer refute the possibility that the Sanborn note was delivered to Elma Turner to be immediately given to Elsa Boydstun, in spite of the fact that it was contained in the same package, and no reservation with respect to that note was made by Mrs. Clark when she handed the package to her niece. Elma Turner testified that "She (Mrs. Clark) said that $1000.00 was to go to Jim (Boydstun) from Roy's note, and $500.00 of Roy Uhl's note was to go to Henry Hansen". On the contrary, Elsa Boydstun testified that her aunt had told her that Henry and Jim Boydstun were each to get $1,500. The inference is that they were to get that sum from the two $1,500 notes entrusted to the care of Elma Turner, which refutes the theory that either of those notes was given to the defendants, or either of them.

Another circumstance occurred which is inconsistent with the defendants' claim that the instruments were given to Elsa Boydstun. April 30, 1937, after the appointment of the executor of the estate of Missouri E. Clark, deceased, his attorney wrote to Miss Boydstun demanding the immediate delivery of all stocks, bonds, certificates, notes and securities, as property belonging to the estate. In compliance with that demand, Mr. Townsend, who was then her attorney, wrote a letter to the executor's attorney, enclosing the two Washington-California bonds at $500 each, together with the certificates of stock in the People's Savings and Commercial Bank of Chico. Neither the defendants nor their attorney then made any claim that those instruments were given or belonged to either of the defendants. Yet those instruments were also enclosed in the package of documents which it is claimed were given to Elsa Boydstun.

Several witnesses testified to acts and declarations of Mrs. Clark, made after she broke her hip and while she was in a hospital, which are inconsistent with the theory that any of

those instruments was given to the defendants or either of them. The record abundantly supports the finding of the court that a gift of the instruments was never made or intended to be made by the deceased to the defendants or either of them.

It is a uniform rule that to consummate a gift of personal property without consideration, under sections 1146–1148 of the Civil Code, it is necessary that there shall be an immediate surrender of the article which is the subject of the gift, together with all dominion and control over it. If dominion and control over the gift is retained by the donor until his death, it becomes merely an unexecuted and unenforceable promise to make a future gift. (*Beebe* v. *Coffin*, 153 Cal. 174 [94 Pac. 766]; 13 Cal. Jur. 40, sec. 7.)

In *Azevedo* v. *Azevedo*, 1 Cal. App. (2d) 504 [36 Pac. (2d) 1078], it is said an intention to make a gift is an essential element to consummate the gift. If the donor reserves the right of dominion and control over the property, it is fatal to the legality of the gift. (13 Cal. Jur. 36, sec. 4.)

The record in this case abounds with evidence that Mrs. Clark did not intend to give the package of instruments to her nieces, and on the contrary, that she did reserve and exercise the right of dominion and control over the documents.

The cases relied upon by the appellants in support of their contention that an absolute gift of the instruments was made to her nieces may all be reconciled by the differences between the facts of those cases and the circumstances of the present case. We think those authorities do not control in the present case.

We have carefully examined the findings which were adopted by the court in the light of the judgment which was rendered, and with one immaterial exception we are of the opinion the findings fully sustain the judgment.

The exception previously mentioned has reference to the order in the judgment for the defendants to forthwith deliver to the executor the fifty shares of the capital stock of the People's Savings and Commercial Bank of Chico. It appears, as we have previously stated, that, in response to a demand for the instruments, the bank stock shares were delivered to the executor just after the commencement of this suit. The record shows that the bank failed in 1933, and that

the stock was valueless. But the order of the judgment to surrender those shares is harmless, for it has already been accomplished.

The judgment is, however, modified by striking therefrom the order for the delivery of the fifty shares of bank stock.

As so modified the judgment is affirmed, respondent to recover costs on appeal.

Pullen, P. J., and Tuttle, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 6, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 30, 1940.