[Civ. No. 20621.   Second Dist., Div. Two.   Mar. 21, 1955.]

ANNA ZILVER BLONDE, Plaintiff and Respondent, v. Estate of WILL A. JENKINS, Deceased, et al., Defendants and Respondents; DOROTHY BERGERE WADE, Appellant.

DOROTHY BERGERE WADE, Appellant, v. BERNARD PAUL DROOG et al., Respondents.

[Consolidated Cases.]

Elmer J. Walther for Appellant.

G. Harold Janeway and James P. Brice for Respondents.

MOORE, P. J.—This is a controversy between two claimants to personal property, each asserting ownership by virtue of an alleged gift by William A. Jenkins, now deceased. Each lady filed suit against the other and against the executor of the Jenkins estate to quiet title to certificates for 250 shares of the capital stock of the Portland General Electric Company. Each alleged ownership of the shares. Respondent Blonde alleged the gift to her on December 23, 1952; appellant Wade alleged the gift to her on the first day of the same month. The two actions were consolidated. The court found all the pertinent allegations of Mrs. Blonde true and all the pertinent allegations of Miss Wade untrue and by its judgment quieted title in respondent to the certificates for

250 shares and adjudged that neither appellant Wade nor the executor of the Jenkins estate owns any interest or right in or title to such certificates or to any of the 250 shares. A reversal is demanded on the ground that the findings are contrary to all the evidence.

Will A. Jenkins had been in the employ of an insurance company at Los Angeles for over 40 years. Appellant had been his secretary for five years. He had been generous to some associates and had occasionally paid appellant's hospital bills. About December 1, 1952, she visited him at his home. She testified that while there he made her a present of the shares; that he took from a closet some papers and handed them to her, saying, "Dorothy, I am giving you some securities . . . 250 shares of Portland General Electric . . . I will endorse them over to you now . . . I am giving them to you"; that he entered her full name and the number of shares on the reverse side of each certificate, signed it and handed it to her; that he then remarked: "It will be necessary for me to have my signature guaranteed; the next time I am down at the bank I will have it done"; that she thereupon replied: "I know you will take care of everything and will keep them for me for safekeeping"; that his reply was he would attend to it and take care of everything. The court found against such testimony of appellant.

The substance of the testimony of Mrs. Blonde was that she was the housekeeper of decedent for 23 years and until his decease; that she first learned of the gift to her from Mr. Droog about 9 a. m. on the 22d day of December, 1952; that two hours later Mr. Jenkins called her into his den and said: "Mrs. Blonde, I have a gift of stock for you; I can't hand it to you, but I am having Mr. Droog take it down to the bank and have it transferred to your name . . . you have been very faithful to me over these years"; that he went to the hospital the same day and she never saw him again; that on the following day she first saw the bank's receipt in her name for the stock, given her by Mr. Droog; that she gave the receipt to her son on December 24th; that on January 26, 1953, Mr. Droog received the securities; that she had never received physical custody of the shares; that after they had been transferred to her name the certificates were returned to Mr. Droog.

It will be borne in mind that the court made findings that on December 24, 1952, defendant Droog, at the express request of Will A. Jenkins, delivered the three certificates for 250

shares of the capital stock of Portland General Electric Company duly endorsed by Will A. Jenkins for transfer to respondent; that he directed the bank to forward such certificates to the transfer agent of the corporation; that he received a receipt from the bank for the "shares issued to and in the name of Anna Zilver Blonde, which receipt he delivered to her on December 24, 1952, prior to the death of said Jenkins . . . Bank did forward said certificates, so endorsed by said Jenkins, to the transfer agent . . . for transfer thereof to said Anna Zilver Blonde, and said shares were thereafter so transferred and returned to said Bank for delivery to said Anna Zilver Blonde . . . said transfer agent returned the original three certificates to said Bank and said Bank thereupon in the month of January 1953 delivered said original certificates to said Droog, as Executor . . . without the knowledge or consent of said Anna Zilver Blonde." In view of such finding, the sole question for decision now is whether Mr. Jenkins about December 1, 1952, made a complete gift of such shares to appellant.

The record is destitute of any evidence that appellant ever asserted any claim to the shares until after the death of Jenkins. Under such circumstance, the claim of a gift can be sustained only "by clear and satisfactory evidence of every element which is requisite to constitute a gift." (*Denigan* v. *Hibernia Sav. & Loan Soc.,* 127 Cal. 137, 141 [59 P. 389]; *Humble* v. *Gay,* 168 Cal. 516, 520 [143 P. 778].) Gifts first asserted after the death of the alleged donor are always regarded with suspicion by the courts. (*Ibid.*) Because of the facility with which, after a donor is dead, a fraudulent claim of ownership may be founded on a pretended gift, assertedly made while the donor was living, it is but a salutary precaution which requires explicit and convincing evidence of every element that constitutes a valid gift *inter vivos.* (*Sullivan* v. *Shea,* 32 Cal.App. 369, 371 [162 P. 925].)

In order to make a valid gift, a donor must not only make delivery and part with control of the object claimed, but the donor must at the same time have the intention to complete a presently effective gift and a delivery amounting to a present transfer of title. (*Bishop's School upon the Scripps Foundation* v. *Wells,* 19 Cal.App.2d 141, 146 [65 P.2d 105]; *Knight* v. *Tripp,* 121 Cal. 674, 678 [54 P. 267]; *Estate of McEuen,* 18 Cal.App.2d 180, 181 [63 P.2d 332].) And that intention must be executed by a complete and uncon-

ditional delivery. (*Estate of McEuen, supra*; *Sullivan* v. *Shea, supra.*) The donee has the burden to prove the gift.

Appellant contends that after the certificates were delivered to her, she returned them to Mr. Jenkins for safekeeping. In other words, she revested in him all that he had delivered to her. The certificates were restored to the same pigeonhole, drawer or strongbox that had hitherto retained them. They never left the custody of the owner on December 1, 1952. All that passed between Mr. Jenkins and appellant were words. He had, after the conversation, all he had ever had. If he talked about giving the stock, he still retained possession and dominion over it after she had gone. ■ To constitute a valid gift *inter vivos*, the gift must be complete by actual delivery without power of revocation. (*Edwards* v. *Guaranty Trust & Sav. Bank,* 47 Cal.App. 86, 89 [190 P. 57] ; *Lefrooth* v. *Prentice,* 202 Cal. 215, 225 [259 P. 947] ; *Morehead* v. *Turner,* 41 Cal.App.2d 414, 422 [106 P.2d 969].) If dominion and control over the gift is retained by the donor until his death, it becomes merely an unexecuted and unenforceable promise to make a future gift. (*Morehead* v. *Turner, supra*; *Beebe* v. *Coffin,* 153 Cal. 174, 177 [94 P. 766].) Reserving dominion and control over property is fatal to the asserted gift thereof. To accomplish a gift *inter vivos,* the donor must divest himself completely of the power of revocation. (*Edwards* v. *Guaranty Trust & Sav. Bank, supra.*)

■ In the light of the cited authorities, of the testimony of appellant and in view of the permanent absence of Mr. Jenkins, it would be most ungracious to hold that he made a gift to be presently effective. Clearly, the nonagenarian had in mind that he could not make a disposition of the stock without his signature being first guaranteed on the certificates by a bank official. He told appellant: ''It will be necessary for me to have my signature guaranteed . . . I will have it done.'' For what reason did he think the guaranty necessary? Surely, he was not then so vain as to desire to see a guaranty of his autograph. He was in a serious mood and was thinking only of a valid transfer. It is not unlikely that at that moment he had visions of Mrs. Blonde and her long friendship and faithful service. His heart was full of gratitude and it sought expression. He may at first have had thoughts of enriching Mrs. Wade; but as the drama moved on he drifted to new intentions, to a different donee. Thereupon, he gently dismissed appellant with the suggestion of having the bank certify his signature. Mrs. Wade never

thereafter saw the certificates. He made no promise as to when the certificates would be transferred to her. He did nothing to make a presently effective gift. If he thought a guaranty of his signature was essential to a completed gift, his choice of a donee was indicated by such act after he had inserted respondent's name in the assignment. He kept the certificates in his possession until December 24th, the while he had them he made the valid assignments to respondent. He sent them to the bank for transfer. His messenger, Mr. Droog, took the bank's receipt for the certificates and delivered it to respondent prior to Mr. Jenkin's death.

There is nothing in the record to indicate that Judge Swain was in the least arbitrary. He zealously heard the narrative recited by appellant and weighed it against the testimony of respondent and of Mr. Droog and the executed assignments by Mr. Jenkins. The testimony of Mr. Droog was especially potent in that the findings against appellant by reason thereof have substantial support. Therefore, the finding cannot be disturbed on appeal. (*Savelli* v. *Simon*, 25 Cal.App.2d 365, 368 [77 P.2d 486] ; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)

Judgment affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied April 6, 1955.