HUGH McCAFFREY, APPELLEE, v. CITY OF OMAHA ET AL., APPELLANTS.

FILED NOVEMBER 2, 1904.   No. 13,787.

1. Cities: STREET IMPROVEMENTS. Where the wearing surface of a paved street in a city of the metropolitan class has become so rotten and decayed as to be unfit for use, and in a work for the improvement of such street it is proposed and required that all the material composing the wearing surface of the entire portion of the paved street shall be removed and a new material of the same or of a different kind replaced or relaid thereon, even though on the same concrete base, such proposed work constitutes a "repaving" of the street as distinguished from "re-

pairing," as those words are used in the charter act of such cities, applicable to and regulating the manner and method of improving such streets.

2. Repaving: Petition. In the case at bar, it is *held* that the contemplated improvement of the street is essentially and in substance a "repaving" thereof as distinguished from "repairing," and can be engaged in by the city authorities only upon a petition of the abutting property owners, when it is proposed to tax back to the abutting property the cost of such improvement.

Appeal from the district court for Douglas county: Alexander C. Troup, Judge. *Affirmed.*

*C. C. Wright* and *W. H. Herdman,* for appellants.

*Frank H. Gaines, contra.*

Holcomb, C. J.

This is a suit for an injunction, brought by the plaintiff, appellee here, for the purpose of restraining the appellants, the mayor and council of the city of Omaha, from awarding a contract for certain work for the improvement of a street in one of the paving districts of the city of Omaha, and from taxing back to the abutting property owners the cost of such proposed improvement. To the petition filed in the trial court the defendants interposed a demurrer, which upon consideration by the court was overruled, and an order entered perpetually enjoining the defendants from proceeding further under the proposed contract to make such improvement in the manner as therein contemplated, and from taxing the cost thereof to the abutting lot owners. That portion of the petition material to a proper understanding of the case alleges that "said 16th street from the south line of Douglas street to the south line of Izard street was many years ago paved with asphalt, and that the guaranty period of such pavement has long since expired, and that the pavement is in a very defective and rotten condition, said pavement being full of large holes, and the entire asphalt surface thereof being

decayed and rotten and practically unfit for use, and that the base of said pavement is in many places much worn, and that the surface of such pavement is in such a condition that it is impracticable to repair the same"; that there was "prepared a proposal for repairing the asphalt pavement on 16th street between the south lines of Douglas and Izard streets with sheet asphalt,  *  *  * and for maintaining such pavement in a condition of continuous repair each year for a period of five consecutive years.  *  *  *  Said proposal and form of specifications were duly submitted to the city council, and by said city council duly approved on April 26, 1904, and approved by the mayor of Omaha May 2, 1904. That, in accordance with said specifications and proposal,  *  *  * bids  *  *  * were duly opened, and it was found that the Barber Asphalt Paving Company had made the lowest bid upon such repairs, to wit, for first year, $27,985; second year, $498.05; third year, $498.05; fourth year, $498.05; and fifth year, $498.05; and that,  *  *  * unless restrained by the order of this court, the city of Omaha, through its city council and its board of public works, will enter into a contract with said Barber Asphalt Paving Company in accordance with said proposal. That, under and by virtue of the terms of said contract, the said city of Omaha intends to, and will, unless restrained by the order of this court, proceed to assess and levy against this plaintiff, and the property owned by this plaintiff, and all the property abutting on said 16th street between the south lines of Douglas and Izard streets, the cost of said repair and maintenance, claiming and pretending to act under and by virtue of the provisions of the charter of said city of Omaha, to wit, chapter 12a, Compiled Statutes of the state of Nebraska, 1903 (Annotated Statutes, 7450-7688)." The proposal and specifications were attached to and made a part of the petition. But two propositions are argued by counsel appearing in the case, and presented for consideration; the first being, does the proposed street improvement, assuming it to be repair work, come within the

scope and purview of section 6, article IX of the constitution, which provides that "The legislature may vest the corporate authorities of cities * * * with power to make local improvements by special assessment, or by special taxation of property benefited," the right to make such proposed improvement and levy a special tax therefor being derived solely from these provisions? The second is, if it be determined that the proposed improvement, while under the form and name of a repairing of the street, is essentially and in substance a repaving of it, then it is conceded that the right to make such improvement and levy a special tax on abutting property owners for the cost thereof is prohibited by the city charter, which confers such power upon the mayor and city council only through a petition of the abutting property owners, and that such petition is wanting in the present case.

We are content to rest the decision heretofore announced in this case on the latter proposition. The work which it is proposed to engage in, as alleged in the petition and the truth of which is admitted by the demurrer, is, we think, in substance and essentially a repaving of the street, although designated in the proposal and specifications under which the contract was about to be awarded as a work of repair and maintenance. The record in this case in all its material aspects presents questions very similar to those considered and determined in *Robertson v. City of Omaha,* 55 Neb. 718. The two cases are quite analogous. The rule announced in that case is in point here. In the case cited, it is declared in the syllabus that:

"Where, in case a street paved with wooden blocks laid on a concrete base, such blocks have become worthless and are entirely removed in pursuance of a contract entered into with the city, and replaced with vitrified brick laid on the old base, such new improvement is not an 'ordinary repair' within the meaning of the statute, but is a repavement of the street, and to pay the cost thereof a special assessment may be made against the abutting real estate." In the opinion it is said:

"The final argument presented is that the work done by Murphy under the contract was not a repavement of Leavenworth street, but was merely a repair of an existing pavement, and, therefore, the city was liable therefor, and it possessed no authority to impose a special assessment against the real estate of plaintiffs to pay the same. This contention is grounded upon the single fact that the concrete foundation of the former cedar block pavement was utilized in making the improvement in controversy. The entire wearing surface of wood of the old pavement was removed and replaced with vitrified brick, and the mere using of the old base of concrete did not constitute the work an 'ordinary repair' within the meaning, and contemplation, of the statute. The assessment assailed was made for the repavement of the street."

But it is argued the contract in this case is to be let for repairing and keeping in repair, and that the essential elements of a repaving do not exist; that the original grade and plan of the improvement are preserved, and that the repairs are to be of the same material which distinguishes this case from the one cited, the holding in which, it is said, was influenced by the fact that a new and different character of material for the surface was to be laid. The quality or character of the material used in putting on the new pavement or surface does not, to our mind, essentially change the nature of the work which is being done. What is in fact contemplated, what is the nature of the work to be done, must determine whether it is properly a work of "repair" as used in the charter act, or whether it is "repaving" within the meaning of the word as therein found. Repaving, the act declares, can be done only upon a petition of the abutting property owners, when the cost thereof is to be taxed back to the property benefited. In this case, it is admitted that the entire asphalt surface had become decayed and rotten and practically unfit for use, and that it is impracticable to repair the same by patching. The allegations of the petition in this respect are emphasized by the conceded facts

as to the requirement of the specifications and the cost of the proposed improvement contained in the proposal on which the contemplated contract is based. While the work is denominated a repairing of the street for the first year, and its maintenance for each of the other of the five years, yet the cost of the work to be done the first year, as compared with the mere nominal cost of keeping it in repair thereafter, is almost conclusive of the fact that, as alleged in the petition, the entire asphalt surface is to be relaid, and the concrete base repaired wherever necessary to bring it back to its original level. What is contemplated and required to be done is to entirely replace upon the concrete base a stratum of new asphalt, forming the surface of the street as it is used for public travel: It is not, we think, required that the whole of the material used in the paving in the first instance shall be relaid, or a change made in the original plan or grade, in order to constitute the work a repaving within the meaning of that word as used in the charter act of cities of the metropolitan class. To repave is to relay, not necessarily the whole of the pavement as originally constructed, but it is to pave again, cover over with suitable material, or resurface the street, when the surface material as originally laid has become destroyed, so that it is no longer usable. There can, we think, be no distinction in sound reason or principle for saying that, where the surface of the street is laid with brick upon the same concrete base, in place of wooden blocks which have been worn until they are useless, that this is a repaving; but that, if on a like base, when all of the old surfacing, whether it be blocks, brick, or asphalt, is removed, and new material used in replacing and relaying such surface of the same kind as the old, this would constitute a repair only, whether ordinary or otherwise, as distinguished from repaving, within the meaning of that word as used in the statute. If repaving as used in the act means only a new pavement constructed after a regrade or change of plans, and not until the destruction of the old, and every part of it, then, indeed, would there be

but little repaving done, and the statutory provisions relating thereto would be of but little practical use. The legislature, we apprehend, used the word in a different sense, and provided for a plan of repaving with the view of protecting the interests of property owners, and inhibiting a work of such importance and involving such great expenditure to be met by taxing the abutting property, except upon a petition of the owners of such property. The act, we think, contemplates that, when the original paving has become so unfitted for use or destroyed to such an extent as to be useless, so that the whole of the paved portion of the street is required to be relaid or resurfaced with some suitable new material, whether the same kind as, or different from, that originally used, and although on the same concrete base, the work shall be regarded and treated as a repaving, and that such improvement can be made only subject to the provisions relating thereto.

From an examination of the entire record, we are of the opinion that the proposed improvement in the present instance is, in substance and essentially, a repaving of the street within the meaning of the word as used in the charter act, and, as such, can be undertaken only upon a petition by the property owners, where it is proposed as it is here to tax the cost of such improvement to the real estate abutting on the street as thus improved. It is for these reasons that the judgment of the district court is

AFFIRMED.