## CITY OF HAZARD v. MAIN STREET REALTY CO.

Court of Appeals of Kentucky.

May 22, 1953.

Rehearing Denied Dec. 4, 1953.

D. G. Boleyn, Hazard, for appellants.

S. M. Ward, Hazard, for appellees.

CULLEN, Commissioner.

The City of Hazard brought an action against the Main Street Realty Company to enforce the lien of a special assessment levied against property owned by the realty company, for a proportionate part of the cost of resurfacing Main Street in Hazard. Evidence was heard by the court, without a jury, and judgment was entered dismissing the action. The city appeals.

Although the court did not give the reasons for its decision, it appears that the court accepted one or both of the defenses asserted by the realty company, which were: (1) The resurfacing project did not constitute an improvement, for which abutting property could be assessed, but merely constituted a repair of the street; (2) the street had been taken over by the State Highway Department as part of the primary road system, and the city therefore had lost its authority to improve the street. The city maintains that neither defense is sustainable.

The portion of Main Street here involved had been paved with concrete in 1923, at the expense of abutting property. In 1950, the city passed an ordinance for the resurfacing of this portion of Main Street, and several other streets, with blacktop or bituminous hot mix in two layers of an overall thickness of three inches. There is some dispute in the evidence as to the condition of the concrete pavement of Main Street at the time the ordinance was passed, the evidence for the city being that there were numerous cracks and patches in the street, and the evidence for the property owner being that the street was in excellent condition with the exception of one or two repaired spots where the concrete had been taken up to install utility lines.

The resurfacing work was undertaken under the provisions of KRS 94.291 to 94.325 (chapter 165, Acts of 1950), which

authorizes the "improvement" of streets at the expense of abutting property. In KRS 94.010(2), "improvement" is defined as "original construction or substantial reconstruction, as distinguished from repair", and it is provided that "'street improvement' embraces the construction and reconstruction of streets, including grading or regrading and paving or repaving".

Under KRS 94.294 it is provided that when one complete street improvement has been made at the cost of abutting property owners, no assessment against property owners for "further improvement" of that street, other than a widening project, may be made for a period of 15 years.

▇ As an initial proposition, merely construing the statute, we would have no difficulty in concluding that the resurfacing of a concrete street with three inches of asphalt constitutes an "improvement." It is observed that the statute defines "improvement" as embracing construction or reconstruction work of a character distinguished from repair. Ordinarily the word "repair" carries the connotation of restoration. Webster defines "repair" as meaning "to restore to a sound or good state after decay, injury, dilapidation, or partial destruction." It is quite clear in the case before us that the purpose of the resurfacing was not to patch or restore the street to its former condition, but rather to improve the street and place it in a better condition than it was originally.

In other jurisdictions it has been held almost uniformly that the placing of a new asphalt surface on a concrete base constitutes reconstruction rather than repair. Fuchs v. City of Cedar Rapids, 158 Iowa 392, 139 N.W. 903, 44 L.R.A.,N.S., 590; McCaffrey v. City of Omaha, 72 Neb. 583, 101 N.W. 251; Wright v. City of El Reno, 168 Okl. 594, 35 P.2d 473; Field v. City of Chicago, 198 Ill. 224, 64 N.E. 840; 48 Am.Jur., Special or Local Assessments, sec. 47, p. 603; 63 C.J.S., Municipal Corporations, § 1312(a), pp. 1053, 1054; annotation, 44 L.R.A.,N.S., 593, 594.

Some doubt concerning the correctness of our interpretation of the statute might be raised by an examination of the opinion in City of Covington v. Bullock, 126 Ky. 236, 103 S.W. 276, in which it was held that where a street originally consisted of an asphalt surface over a concrete base, and the original asphalt surface was removed and completely replaced by a new asphalt surface, the replacement work constituted a "repair" for which abutting property could not be assessed. However in later cases, particularly Kimbley v. Hickman, 163 Ky. 713, 174 S.W. 484, and Southern Bitulithic Co. v. Sweeney, 195 Ky. 577, 242 S.W. 846, it was held that similar replacement of an asphalt surface constituted original construction or reconstruction as to property owners who had not been assessed in the first instance, for the cost of the original street.

It would appear that the rationale of these cases was that the abutting property should be assessed once, but not more than once, for the cost of a street improvement. Under the present statute, KRS 94.294, the policy has been laid down that abutting property may be assessed for improvements at least once each 15 years. In the case now before us, some 27 years elapsed between the improvements. In view of the statute, the original assessment made 27 years ago disappears as a factor to be considered, and the situation may be considered the same as if no original assessment had been made. Therefore, the Hickman and Sweeney cases may be considered applicable.

We have no doubt under the evidence that the resurfacing work in the instant case was of the character of an improvement, in fact, and it is our opinion that it was an improvement within the meaning of the statute.

As previously noted, the second defense of the property owner was that the city had no power to improve Main Street because the street had been taken over by the State Highway Department as part of the primary road system.

Under KRS 177.041, it is provided that when a city street has been designated as

part of the primary road system, "the future maintenance, repair, construction and reconstruction of such streets shall be done by the Department of Highways". However, KRS 177.043 provides that the Department of Highways "may" maintain and repair, construct and reconstruct such city streets, and may enter into contracts with cities for that purpose. KRS 177.044 provides that before constructing or reconstructing a street by the department the plans must be approved by the city. KRS 177.045 prohibits the department from constructing, reconstructing, repairing or maintaining a street until the city has deeded to the department all right of ways it owns upon the street.

In 1942 the City of Hazard entered into a contract with the Department of Highways, following designation of Main Street in Hazard as part of the primary road system. Under the contract the department agreed to maintain the street, and further agreed, "in the event it is found necessary by the Department of Highways to construct or reconstruct" the street, to pay the cost of construction or reconstruction. Another clause of the contract recited that "it is agreed and understood that the Department of Highways, its agents, servants and employees, or its contractors, are acting only as the agent of the city in the construction or reconstruction of said streets." The contract required the city immediately to convey to the department all right of ways owned by the city upon the street, but at the time the resurfacing work here in question was done such a deed had not yet been executed.

Shortly before the resurfacing work on Main Street was done, the Highway Department had undertaken a bypass project on another street in Hazard, costing $750,-000. The mayor testified that the department had indicated that it would be some period of time before the department would be able to spend any money on Main Street.

Although there is no direct evidence on the question, it appears that the resurfacing work was done by the city with the approval of the Highway Department, or at least the standard of the work was acceptable to the department.

Prior to the enactment of KRS 177.041 to 177.047, there were statutes providing for the designation of city streets as part of the primary road system. Those statutes, sections 4356t–5 and 4356t–8, Carroll's Kentucky Statutes of 1922, provided that the cost of construction should be borne entirely by the state, unless the type of construction through the city was of a higher quality than outside the city in which event the city was required to pay the additional cost.

In Shaver v. Rice, 209 Ky. 467, 273 S.W. 48, it was contended that the 1922 statutes above mentioned prevented a city from improving, at the expense of abutting property owners, a city street which had been designated as part of the primary road system. The court rejected that contention, pointing out that by reason of the lack of sufficient revenue to enable the immediate improvement of all streets designated as part of the primary road system, a deplorable condition would result if cities were held powerless to improve their own streets, and the legislature could not be presumed to have intended such a result. The court held that until such time as the Highway Department actually undertook construction of a city street, the city retained the authority to improve the street at the cost of abutting property owners.

While the present statute differs in some particulars from the 1922 statute, it contains no specific or necessarily implied prohibition against improvement of a street by a city. The differences in the statutes are not such as to require the conclusion that the legislature intended a different result than that reached in Shaver v. Rice. It is our opinion that the present statute should be construed the same as in Shaver v. Rice, on the point in question, and that the City of Hazard had authority to improve Main Street, under the circumstances that existed, at the expense of the abutting property owners.

The decision in Perry v. City of Cumberland, 312 Ky. 375, 227 S.W.2d 411, construing the present statute, is not contrary to the view we have taken here. It was there held only that the city has no *duty* to maintain streets designated as part of the primary road system, and that the control of maintenance, repair and improvement is invested in the Highway Department. However, control by the department is not inconsistent with the making of improvements by the city with the approval of the department.

The judgment is reversed, with directions to enter judgment for the city.