John E. THOMPSON et al., Appellants,

v.

BRACKEN COUNTY, Ky., et al., Appellees.

Court of Appeals of Kentucky.

Oct. 26, 1956.

944

Joseph B. Hennessey, Augusta, for appellants.

Robert T. Jennett, Jr., Brooksville, for appellees.

MONTGOMERY, Judge.

At a 1952 election in Bracken County, it was voted that a special tax levy of 20¢ on

each $100 worth of property be levied under KRS 178.210. The tax was to have been levied each year: "for the purpose of improving and constructing, either or both, the roads and bridges of the county".

For the years 1953–54, 1954–55, and 1955–56, a total of $65,165.93 was collected under the special levy. It was placed by the county treasurer in a separate fund designated as the "Special Levy Road Fund". This fund was kept separate from the "General Road Fund", which was derived from the collection of 15¢ of the 50¢ general tax levy in the county. The "General Road Fund" was used for the maintenance and repair of county roads.

During each of the three years, the fiscal court apportioned all of the road funds, both from the general and special levies, among the eight magisterial districts on a percentage basis according to the number of miles of county-maintained roads in each district. The maintenance of the county bridges appears to have been paid for by money derived from the special levy.

The proportionate part of the road fund money derived from both the general and special tax levies was paid by the county treasurer to the county road supervisor by issuance of warrants. The county road supervisor then expended the money, other than that part for his salary and car expense, as directed by each magistrate in his district. For the fiscal year 1954–55, road warrants totaling $47,711.40, including salary, $1,500, and car expense, $1,000, were paid to the county road supervisor. Except for the repayment of money borrowed and interest, $14,611.16, and for two warrants totaling $100.76, all road warrants were issued to the county road supervisor.

Out of the $65,165.93 collected from the special tax levy in three years, about $10,-000 was expended for the purchase of rights of way for the construction of highways. There is about $10,000 remaining in the "Special Levy Road Fund", and about

$10,000 more was transferred and is now held in the "General Road Fund", according to the county treasurer's records. The remainder of the special tax levy proceeds in the approximate sum of $35,165.93 was paid by the fiscal court to the county road supervisor under the procedure previously outlined.

This action was brought by four citizens and taxpayers of Bracken County against Bracken County, the individuals composing the Bracken County Fiscal Court, and the county treasurer to enjoin them permanently from further dissipation of the special tax levy proceeds for any purpose except the improving and constructing of the roads and bridges of Bracken County. The case was tried on an agreed statement of facts.

The lower court adjudged that the funds realized from the special tax levy were supplemental to the "General Road Tax Fund" and "may be used by the Fiscal Court for the construction, reconstruction and improvement of any and all of the public roads and bridges of Bracken County, but for no other purpose". In the judgment, the permanent injunction requested by appellants was not granted. Their complaint was dismissed, and appellees recovered their cost.

The first question is whether the proceeds of a special tax levy collected under authority of KRS 178.210 to improve or construct roads and bridges may be used for any other purpose.

Appellants contend that the greater part of the proceeds of the special tax levy has been spent for maintenance and repair of county roads and bridges and that such a use is improper and illegal. Thus, our question is narrowed to one of whether the repair and maintenance of county roads and bridges may be included under the statute as being for the purpose of improvement and construction. The record does not disclose the exact nature of the road work accomplished by the expenditures,

The words "improve", "construct", "maintain", and "repair" have common usage. Simple words when considered in a statute are generally accorded their ordinary and accepted meaning. Louisville Title Co. v. Lucas, D.C., 27 F.2d 413; Old Lewis Hunter Distillery Co. v. Kentucky Tax Commission, 302 Ky. 68, 193 S.W.2d 464.

The word "improve" is defined thus: "to augment or enhance in value or good quality; to make more profitable, excellent, or desirable; to better; to raise the value of; to make useful additions or amendments; to bring nearer to perfection". The word "construct" is defined to mean: "to build, form, or make". Webster's International Dictionary, 2nd Edition.

The same authority defines the word "maintain" as "to hold or keep in any particular state or condition; to support, sustain, or uphold; to keep up, not to suffer to fail or decline". "Repair" is defined as "to restore to a sound or good state after decay, injury, dilapidation, or partial destruction; to reinstate, remedy, heal, make right or mend".

A distinction in the use of these words has been recognized in statutes concerning highways and roads. KRS 94.010(2) (a); KRS Chapter 177. "Improvement" has been held to embrace construction or reconstruction work of a character distinguished from repair. City of Hazard v. Main Street Realty Co., Ky., 262 S.W.2d 87. "Maintain" has been accorded the same meaning as "repair". Schneider v. Neubert, 226 Ill.App. 84. "Maintenance" was held to mean "not creation of something new". Holman v. Santa Cruz County, 91 Cal.App.2d 502, 205 P.2d 767, 769. Ordinary gravel resurfacing of public highways was held to be in the nature of "repair" and not "improvement". Cheney v. County Board of Supervisors of Buffalo County, 123 Neb. 624, 243 N.W. 881.

In short, "improve" and "construct" mean to make better the original status, while "maintain" and "repair" mean to preserve or remedy the original condition. Dougherty v. Taylor & Norton Co., 5 Ga.App. 773, 63 S.E. 928.

To hold that the words "improve and construct" when used in KRS 178.210 include maintenance and repair of roads would be giving these ordinary words a strained and unwarranted meaning. It would give a meaning to the statute which was not contemplated by the legislators. Inter-County Rural Electric Cooperative Corporation v. Reeves, 294 Ky. 458, 171 S.W.2d 978. Since the purpose of KRS 178.210 is to improve and construct rather than to repair and maintain, the diversion or expenditure of the funds realized from the collection of the special tax levy for repair or maintenance of county roads or bridges was improper and illegal. Such expenditures were not within the purview of the specified purpose of the statute. As such, they were in violation of Kentucky Constitution Section 180 and KRS 68.110, which prohibit any tax levied for a specified purpose from being devoted to any purpose not specified by the statute.

The lower court held that the special tax levy funds were supplemental to the general road fund, which appears to have been primarily a maintenance and general repair fund. So far as the special tax levy funds were used to supplement the general road fund for repair and maintenance purposes, such use constituted an unauthorized and improper deviation from the specified statutory purpose. Such special funds could have been used to supplement general road funds only so long as they were used for improvement and construction, as defined herein. The fiscal court has no discretion in determining whether special tax levy funds may be spent for any purpose other than the specified statutory purpose. The statute is a mandate insofar as the purpose for which the money must be used is concerned. The lower court judgment is not clear on whether the funds may be used to supplement the

general fund for improvement and construction or repair and maintenance. To the extent that it may be interpreted contrary hereto, it is in error.

■ The judgment is further in error in dismissing the complaint and in failing to grant a permanent injunction against the appellees to prevent them from expending any part of the special tax levy proceeds for the repair and maintenance of county roads and bridges. The rule is stated in Hughes v. Eison, 190 Ky. 661, 228 S.W. 676, 678, thus:

"* * * The funds so raised cannot be appropriated to any other use than that for which they were voted, and if the fiscal court should attempt so to do a court of equity will grant such injunctive remedy as will prevent the division of the funds."

Since the record clearly shows by the agreed statement of facts that part of the special tax levy proceeds was being improperly used for repair and maintenance, the lower court should have granted the injunctive relief requested.

■ The duties of the county road supervisor are set forth in KRS Chapter 179. The supervisor may serve in those counties where a county road engineer is not employed. KRS 179.020(2).

The method of presentation and payment of claims for county road work is prescribed by KRS 179.390(1) as follows:

"All claims due to any person for county road work, shall, when certified to by the county engineer, be presented to the fiscal court, and if the claims are found correct, they shall, upon the order or warrant of the court, be paid by the treasurer or sheriff."

■ It is readily apparent that the statutory method prescribed is vastly different from the method utilized by the Bracken County Fiscal Court in the payment of claims for road work. The opportunities for fraud, mistake, and mismanagement are so obvious under the system in question as not to merit further description. The method employed lends itself to political misuse and waste of the funds. It is based on a misconception that road funds are to be used as individual magistrates may determine in their separate districts, rather than the proper use of the funds by the fiscal court as a whole for the benefit and best interests of the entire county. The statute contemplates that the fiscal court, as a body, shall examine and determine the merit of each claim and shall order its payment accordingly. In no other way can the orderly process of county government proceed. From the record here, it is readily determined that the Bracken County Fiscal Court paid to the county road supervisor the sum of $47,711.40 in the fiscal year 1954–55. Of this amount, $2,500 was paid him as salary and auto expense. The record does not show how the remaining $45,211.40 was spent. Such management of county affairs is appalling. The judgment is further in error in holding that "the record does not show that the Fiscal Court has exceeded its jurisdiction".

■ It seems pertinent at this time to call attention to KRS Chapter 68, County Finance and County Treasurer. Prohibitions are embraced therein against the deviation, misuse, and misappropriation of county tax revenue when a levy is for a specific purpose. If any part of county tax revenue, however small, is used or appropriated by the fiscal court for any purpose other than that for which it was levied, then the members of the fiscal court and its officers may become subject to civil as well as criminal liability. Bird v. Asher, 170 Ky. 726, 186 S.W. 663; Collier v. Bourbon Fiscal Court, 188 Ky. 491, 223 S.W. 149. The question of the individual civil or criminal liability of the appellees is not presented here.

Judgment is reversed with directions to enter one consistent herewith.